FANENE, GI, ASUEGA, TAITO, TUAOLO, and
TAOFI, of Pago Pago, Plaintiffs

v.

MAUGA of Pago Pago, Defendant

## No. 1-1943

## High Court of American Samoa

### Civil Jurisdiction, Trial Division

## February 20, 1943

144

H. L. SHELLENBERGER, *Chief Justice;* PULETU, *District Judge;* and MULI, *District Judge.*

SHELLENBERGER, *Chief Justice.*

This is an action, the purpose of which is to establish the title to five magazine sites located on what is known as the Fagasa trail. On each site there has been erected a magazine by and for the use of the U.S. Government. Mauga applied to the Registrar of Titles for the registration of the five sites in his name. Objections were made to this action on the part of Mauga by the parties whose names appear in the above caption. The matter comes before this Court for the determination of the question as to the real owner of each of the particular sites.

DECISION

 Considerable evidence has been produced, part of which is of no importance to the issue. It appears from the record in the case that a former Mauga, a matai of that family, owned all of the land surrounding and including each particular site. That was years ago. That at various times, the exact dates unknown, the former Maugas gave the land, including these present sites to certain families "for their use only," as Mauga (the present matai) testified, leaving the legal title in the donor. These lands, however, were accepted by the donees as outright gifts and were so held for a long period of years. Beyond dispute, these lands were cultivated by the original donees, their successors in office, heirs and families up to the time when the magazines were erected. Mauga's testimony as to the conditional gifts stands alone, as no corroborative evidence appears in the record to sustain his contention that the lands were conveyed only for the use of the donees. No conditions or terms are found in the testimony of Mauga as to how, why or when the titles of the lands were to re-

145

vert back to the donors, the Maugas. Without these all important facts, the testimony clearly and most convincingly shows that the titles, once parted from the donor, they vested without limitation in the donees. The Court would feel it unjust and without equity to now dispossess those donees who have been in possession of the lands all these many, many years, enjoying the fruits of their labors on the plantations which improved the sites and without any previous objection from the Mauga family. The Court finds authority in the law for its contention.

"The general rule is that a parol gift of land, accompanied by possession by the donee will be enforced in equity, when the donee has been induced by the promise of the gift to make valuable improvements to the land, of a permanent nature, and to such an extent as to render a revocation of the gift unjust, unequitable, and a fraud upon the donee. Such a state of facts will entitle the donee to defend his possession against the donor or his heirs."

28 Corpus Juris 656.

■ Then too, it was urged by Mauga that because of the fact that these lands were given to other families in return for their services rendered and to be rendered to the Mauga family, and, further, because of the fact that certain matai titles were at the same time bestowed upon the donees of the gifts, then, by virtue of such gifts, conditionally made, and the bestowing of the titles on the donees, the title to the lands would revert back to the Mauga matai and his family. Once again the Court must necessarily point out that Mauga is alone in this contention. Contra, it is disputed by each of the other parties to this action. In fact they go so far as to dispute such was the set of facts, stating in support of their contention that the gifts of the lands were outright and without condition, precedent or subsequent. The matter of whether or not the service was rendered to the Mauga family or the titles bestowed upon the donees was never definitely settled and the Court dis-

missed that part of the issue as not having so decisive a bearing upon the issue.

Gi, the only objector to Mauga's claim to Site No. 1, testified that this particular site is known as Vaovai, that it has been in his family continuously for over twenty years, being, all this time, constantly under cultivation by his family without any objection on the part of Mauga. This continued up to the time when the magazine was erected on this site. Gi testified that up to the present time he has been cutting copra from this site. He maintains his title came down from Gi Tutuila, years ago, undisturbed. Mauga does not dispute this fact, except that the title came from Mauga. There is no dispute of the fact that the Gi family has had this site under cultivation all the years it has been in the possession of the Gi family. Mauga did no cultivating of this site whatever.

Therefore, applying the law as we have quoted it, there is but one conclusion for the Court to reach under the facts, THAT GI IS THE TRUE AND LAWFUL OWNER OF SITE NUMBER ONE.

Site No. 2 is claimed by Mauga and Taito. Inasmuch as the Mauga claim to this particular site is based upon the same facts as set forth in his contention in site No. 1, and there is no material change or addition to his evidence as given in the testimony as to site No. 1, the Court must follow the same reasoning in site No. 2 as it followed in site No. 1, that Mauga has not established his right to the title to site No. 2. Taito is the only objector to this site. He maintains, and so testified that this site came into the Taito family from the Mageo family, as a gift, outright, seventy years ago, and that ever since that time, up to this very date, he, Taito has cultivated this land, together with the former members of the Taito family. This fact was not denied by Mauga, therefore the Court accepts Taito's testimony as CLEARLY ESTABLISHING TAITO'S RIGHT

TO THE TITLE TO SITE NUMBER TWO, AND SO ORDERS.

Site No. 3 is being claimed by Mauga, Fanene, Taofi and Asuega. In open Court Mauga withdrew his claim to this site and acknowledged Fanene to be the true and lawful owner of site No. 3. Taofi and Asuega also withdrew their respective claims to this particular land and in so doing recognized Fanene to be the true and lawful owner of the site. Therefore, taking this evidence as sustaining Fanene's contention of ownership, and there being no objections to Fanene's claim there remains nothing for the Court to decide except the claim of Fanene. ACCORDINGLY, THE COURT FINDS FANENE TO BE THE TRUE AND LAWFUL OWNER OF SITE NUMBER THREE.

Site No. 4 is being claimed by Mauga, Asuega and Tuaolo. The Asuega family contends the site is located on the land known as Vaima, while Tuaolo maintains the site is located on the land known as Vaipito, and of course each family owns that particular tract of land so named. Mauga's claim is based upon the same evidence as set forth in his claim to sites Nos. 1 and 2. Nothing additional was given by him in his evidence to warrant the Court in coming to a different conclusion than that reached by the Court in its decision announced as to sites Nos. 1 and 2. Mauga has no claim to site No. 4. Upon an actual view of this site, together with the facts in possession of the Court as to the name of the particular tract of land upon which the magazine is located, the Court is of the opinion that the tract of land is Vaipito. While this decision may or may not be decisive of the question of ownership of this site, we desire to proceed further and point out the facts which have sustained the Court in reaching its conclusion as later announced herein.

Asuega Sugato was a former matai of that family. He married into another family, a party known as Faaone, daughter of Leaoa. Right here it might be well to point out that a Leaoa was the donee of this land, according to Mauga's testimony. We have already found the gift to be one without limitation. Such being the case we can safely start with the assumption, based upon Mauga's testimony, that Leaoa was the former owner of this tract of land. Asuega claims this land came from "nature" years ago, that "we didn't get this land from anyone, it has always been ours, in our family." Two sons were born as issue of the marriage of Asuega Sugato and Faaone, those two sons were Tuli and Taetafe. After the death of Sugato the two sons above named left the Asuega family and took up their residence with the Tuaolo family where they later became matais of that family, taking the names of Tuaolo Tuli and Leaoa Taetafe.

For over forty-three years, up to the present time, the two sons of Asuega Sugato, under their matai names, cultivated this tract of land upon which site No. 4 is located. Their children likewise cultivated this land. (See pages 23–24 of the proceedings.) However, this cultivation, it is claimed by Asuega, was done by the two matais without the objection from the Asuega family because the two sons were blood relations of the Asuega family. That this may be the Samoan custom the Court will not question, but the Court is confronted by the fact that never, at any time, did a single member of the Asuega family testify that any member of the Asuega family (outside of the two brothers who have held themselves out to be members of the Tuaolo family more so than members of the Asuega family because of the fact they have held matai titles in the Tuaolo family and none in the Asuega family) plant or cultivate the land to which they now claim title. They come into Court with the claim of title from the matais of another family.

■ If the Leaoa mentioned above as the father of Faaone, received the title to this land from Mauga and later died, and Faaone's two sons resided with her as matais of the Tuaolo family, is it not more logical to reason that the land descended to those two matais of the Tuaolo family rather than to reason the title descended from the Asuega Sugato when, according to the testimony of the Asuega family, none cultivated the land except the Tuaolo family. We have only the testimony to guide us. We cannot claim to have the powers which would enable us to delve into man's innermost mind and draw facts therefrom. During all these years of occupancy of the land by Tuaolo, never once did the Asuega family object. We cannot, in face of the other facts, accept their claim that they did not object because they believed the two matais of the Tuaolo family were using the land under the color of the Asuega family. Such being the facts, and no one can change facts, we must come to the conclusion THAT TUAOLO IS THE TRUE AND LAWFUL OWNER OF SITE NUMBER FOUR.

When the Court announced its readiness to hear the testimony of parties concerning the ownership of Site No. 5, Taito, an interested party, in open Court, withdrew his claim to this site, stating, at the time same time [sic] that he recognized Gi as the owner of it. Mauga was then called upon to produce his evidence to sustain his allegations as to ownership to site No. 5. Aimu, the first witness for Mauga, testified in effect that this tract of land originally belonged to the Mauga family, and that the former Mauga admitted to this witness that the tract had been given away, as a gift to Leota. This all took place while the present Mauga was yet a young man. But this witness, when asked the question as to who is now claiming this site, replied that Mauga was claiming it, that Leota did not claim it and in his, this witness' opinion, Mauga owned site No. 5. He further testified that there were no plantations of either

the Mauga family or the Asuega family on this site. Another witness sustained the former witness' contention, that neither Mauga, Asuega or Gi had plantations on the site. Mauga testified that the land had been given away to Leota, as a conditional gift, for only the use of the donee, and that the Mauga family still retained the legal title to the site. When asked whether the donee of this tract of land or any other donee of the Mauga family knew the gifts were only for the use of the donees, Mauga's reply was "they should have known." With this statement Mauga rested his case.

Taetafe, the first witness for Gi testified that she is the widow of Asuega Afasa, the daughter of a Gi. She went to Gi and secured his permission to plant on this tract. She and her husband, as she testified, recognized Gi as the owner of the land. It was her testimony in conformity with the communal planting, on this tract, that Aiumu and the other people of Pago Pago, including Siitupe all had their planting in this tract through the permission of Gi. Upon the removal of Asuega, his widow, this witness, went to Gi and relinquished her right to plant in the tract. She said "It is just like other people when they are through they cease going up there and the title remains in Gi because he is the owner." (Page 38 of the proceedings.) From the first Asuega up to the husband of this witness, there was never an Asuega on that land. She repeated that she knew of none other who had the title, that the title to the land was in Gi.

Alo's testimony was to the effect that this tract of land has been in the Gi family for many years, constantly under cultivation from the first Gi up to the present matai. When Afasa ceased to use the name Asuega, Taetafe, the daughter of Gi, returned to Gi and surrendered her right to cultivation of the land. That Gi and that family are still making use of the land up to this day. We are impressed with

the fact that at no time were there objections to Gi's use or cultivation of the land. During all these years that that family were holding the land as owners and users of the same, not once were objections raised against the Gi matai or the family.

The Asuega family testified that this particular tract of land is known as Vaima and that the first cultivation took place under Asuega Sugato, next under Asuega Moeva. Here we quote from the proceedings on page 41, as we feel the evidence is highly important. "The constant use of the plantations and the upkeep of the same were under the care of the two brothers that I mentioned, Tuaolo Tuli and Leaoa Taetafe. It was not through any other relationship but it is through their relationship with the Asuega family and not the matai names they were under." It appears here that the Asuega family is resting their case upon the same bases as that which they urged in the matter of site No. 4. The Court in that particular finding as to that particular site found that the land held by those two brothers was held by them in their capacity of matais. In this case before us it appears to us that when the two brothers left the Asuega family and went to live with their mother, a Tuaolo, their interests so far as aiding the Asuega family in their chain of title ceased to exist. From the facts we gather that the widow of Asuega Afasa is best qualified to testify as to who cultivated the tract of land in which we are now interested. If she, as the widow of Afasa, states that she and her husband, a matai of the Asuega family, cultivated the land only through permission of Gi and later surrendered that privilege, who is present that can or did testify contrary to those facts.

We are bound to come to the conclusion on facts which clearly establish a right. They must be convincingly clear and admit of no other reasoning. The burden rests upon those who assert their rights to sustain their rights

against all others. In this we have definitely decided that Mauga and Asuega have failed. On the other hand the testimony of Gi has impressed us with its clearness and logical facts. Such facts warrant but one conclusion and THE COURT ACCORDINGLY FINDS THAT GI IS THE TRUE AND LAWFUL OWNER OF SITE NUMBER FIVE.

■ In the disposition of these cases the Court fully appreciates the responsibility which rests upon it. There is no doubt that various families intermarried, and that the children of such intermarriages cultivated and reaped the benefits of certain plantations. All this is the result of and in conformity with Samoan custom, long ago established and now fully recognized by the Court. It may be extremely difficult at times to differentiate between the cultivation of plantations under this custom and that under the color of title and ownership. Only the facts, circumstances and the intention of the parties alone may determine these issues. Then too, in the consideration of these cases the natural boundary lines and the names of certain tracts of land by the name of which they are most commonly known and referred to by those within whose minds such facts are clearly imprinted must all be taken into consideration when the true and lawful owner of a particular tract or site of land is sought.

The Court has not found it necessary to frequently quote at length the testimony found in the record, as much cumulative evidence is found, but the foremost thought in the mind of the Court has been to admit freedom to the parties in the admission of evidence in support of their claims or contentions. In this direction the Court viewed, in company with the parties hereto, each particular site, taking note of the conditions of the sites, the surrounding land as to its cultivation, and the natural boundary lines enclosing some particular site or tract of land. As for the

establishment of these lines, there was little, if any, dispute. The confusion or dispute came when the Court endeavored to learn the name of the particular tract of land enclosed by those boundary lines. But taking the testimony as a whole, the bias or the interest of the parties concerned, the Court was able to come to a conclusion which it believes just and proper in settlement of each particular phase of the case.

The Chief Justice desires to compliment those who so ably presented their claims to the Court and the spirit of fairness which existed among the many contestants. The Court is of the opinion that the parties sought justice and that they were and still are willing for the entire matter to be decided by the Court upon all the evidence, and that upon a final decision of this case all those who are affected by the Court's decision will faithfully be guided by and accept such as the word of the law and therefore final and binding upon all mankind.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE HIGH COURT, THAT GI SHALL BE AND HE IS HEREBY DECLARED TO BE THE OWNER OF SITE NUMBER ONE: THAT TAITO SHALL BE AND HE IS HEREBY DECLARED TO BE THE OWNER OF SITE NUMBER TWO: THAT FANENE SHALL BE AND HE IS HEREBY DECLARED TO BE THE OWNER OF SITE NUMBER THREE: THAT TUAOLO SHALL BE AND HE IS HEREBY DECLARED TO BE THE OWNER OF SITE NUMBER FOUR: THAT GI SHALL BE AND HE IS HEREBY DECLARED TO BE THE OWNER OF SITE NUMBER FIVE. The Registrar of Titles is hereby instructed to so register the titles. The costs of this action amounting to $100.00 shall be paid as follows: $75.00 by Mauga and $25.00 by Asuega.